IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 13, 2004 Session

## STATE OF TENNESSEE v. GREGORY MORROW

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-11992     Bernie Weinman, Judge**

---

**No. W2003-02401-CCA-R3-CD  - September 13, 2004**

---

The appellant, Gregory Morrow, was found guilty by a jury in the Shelby County Criminal Court of possessing 300 grams or more of cocaine with the intent to sell, possessing 300 grams or more of cocaine with the intent to deliver, and two counts of possessing marijuana.  The appellant received a total effective sentence of fifteen years incarceration in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's ruling on his motion to suppress and raises complaints regarding the application of Rule 41(g) of the Tennessee Rules of Criminal Procedure. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court, but we remand for a merger of the appellant's two cocaine convictions and his two marijuana convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Jack McNeil, Memphis, Tennessee (at trial and on appeal), and Lance Chism, Memphis, Tennessee (at trial), for the appellant, Gregory Morrow.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Scot A. Bearup and Tiffani Taylor, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The appellant was indicted by a Shelby County Jury on charges of possessing 300 grams or more of cocaine with the intent to sell, possessing 300 grams or more of cocaine with the intent to deliver, possessing over one-half ounce of marijuana with the intent to sell, and possessing over one-half ounce of marijuana with the intent to deliver.  The facts adduced at the suppression hearing and at trial reveal that on August 30, 2000, Jevon Bryant, a confidential informant working with the

Memphis Police Department, contacted the appellant to arrange a purchase of cocaine. Ultimately, the two men agreed on a price of $6500 for eight and one-half ounces of cocaine.

Following a prearranged plan, at 11:30 p.m. on August 31, 2000, Bryant and undercover police officer J.D. Smith proceeded to the appellant's home to purchase the cocaine. Upon arrival, the two men parked their vehicle and approached the appellant's front door. Officer Smith noticed the appellant sitting in the driver's seat of a Chevrolet Suburban that was parked in the driveway of his home. The appellant beckoned the two men over and invited them to join him in the truck to smoke a "blunt," or a marijuana cigarette. Bryant agreed, but Officer Smith declined, claiming that he was looking for a job the following Monday and would be required to take a drug test.

After Bryant and the appellant smoked the marijuana, the appellant ushered Bryant and Officer Smith into his home. Once inside, the appellant used keys to secure two locks on the screen door and three locks on the wooden front door. The doors the men entered led into the appellant's living room. Officer Smith sat down on a couch in the living room while the appellant led Bryant into the kitchen. Officer Smith noticed that the appellant had a small handgun in his front shirt pocket and a larger handgun stashed in the waistband of his pants.

From his vantage point on the couch, Officer Smith observed the appellant remove a black backpack from a cabinet underneath the kitchen sink. In order to obtain a better view of the appellant, Officer Smith stood and approached the kitchen. The appellant extracted a quart-sized "zip-lock" plastic bag from the backpack. The bag contained a white powder substance Officer Smith believed to be cocaine. Additionally, Officer Smith noticed two sets of digital scales, which are commonly used by drug dealers to weigh their product, located in the kitchen near the cocaine.

Officer Smith, who was wired with a transmitter, indicated to the takedown team stationed outside that he had seen the appellant in possession of cocaine. Thereafter, Officer Smith told the appellant that he was uncomfortable being locked in the house with the appellant while the appellant was armed with two handguns, and he asked to wait in his car until the transaction took place. The appellant obtained the keys to the locks on the doors, handed the keys to Bryant, and instructed Bryant to let Officer Smith out of the house.

Officer Smith took the keys from Bryant and unlocked the doors, allowing the takedown team to come into the house. The takedown team entered the residence, shouting, "Police, police, police officers, you're under arrest, everybody down." The appellant, Bryant, and Officer Smith lay on the floor of the living room and were handcuffed. While walking through the rooms, the officers observed the bag of cocaine on the kitchen counter. Additionally, on the counter near the cocaine they saw a bag containing a substance which appeared to be marijuana.

Officer Israel Taylor and Lieutenant Lawrence Jamison took the appellant into a bedroom to isolate him from other officers. While in the bedroom, the officers requested permission to search the appellant's house. The appellant, appearing to understand the request, signed a consent to search

form. During the subsequent search, police discovered several additional bags of marijuana throughout the house.

The substances found in the appellant's home were sent to the Tennessee Bureau of Investigation (TBI) crime laboratory for testing. Agent Dana Rose, the TBI forensic scientist who tested the substances, concluded that the white powder was indeed cocaine and the plant material was indeed marijuana. The total weight of the cocaine was 459.9 grams, and the total weight of the marijuana was 472.6 grams.

Based upon the foregoing proof, the jury found the appellant guilty of possessing 300 grams or more of cocaine with the intent to sell, possessing 300 grams or more of cocaine with the intent to deliver, and two counts of possession of marijuana. The trial court sentenced the appellant to fifteen years incarceration for the cocaine offenses and eleven months and twenty-nine days for the marijuana offenses. Additionally, the trial court ordered that the sentences be served concurrently.

On appeal, the appellant questions the trial court's denial of his motion to suppress the contraband seized from his home, and he challenges the application of Rule 41(g) of the Tennessee Rules of Criminal Procedure.

## II. Analysis

### A. Motion to Suppress

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." Odom, 928 S.W.2d at 23. Moreover, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

In denying the appellant's motion to suppress, the trial court noted that the only factual reference in the appellant's motion to suppress provided that "'entry was made and alleged evidence seized in violation of the laws.'" Nevertheless, the trial court allowed a hearing to proceed on the motion to suppress. The trial court noted, "It was extremely difficult to determine exactly what the defense was objecting to, but apparently, the complaint had to do with a search without a warrant and whether the consent to search was voluntarily signed by the [appellant]." Given the nature of the appellant's briefs, we are faced with the same dilemma as the trial court; i.e., discerning from a

quagmire of legal verbiage the exact nature of the appellant's complaints. From our review of the record, it appears that the trial court succinctly summarized the appellant's complaints. Accordingly, we will first address the warrantless entry into the appellant's home.

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures."[1] Generally, a warrantless search is considered presumptively unreasonable, thus violative of constitutional protections. See State v. Walker, 12 S.W.3d 460, 467 (Tenn. 2000). In the instant case, it is undisputed that the police did not have a warrant to search the appellant's home. However, a warrantless search and seizure may be reasonable if it falls within the limited exceptions to the warrant requirement. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Specifically, our supreme court has noted that, "[i]t is, of course, well settled that one of the exceptions to the warrant requirement is a search conducted pursuant to consent." State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-2044 (1973), and State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993)). Generally, consent may be given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." State v. Ellis, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citations omitted). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." Jackson, 889 S.W.2d at 221. The prosecution bears the burden of proving that the appellant freely and voluntarily gave consent. See State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). We further observe that "'[t]he existence of consent and whether it was voluntarily given are questions of fact.'" State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting McMahan, 650 S.W.2d at 386).

In the instant case, the appellant consented to Officer Smith's entry into his house.[2] See State v. Albert D. Wilson, II, No. E2002-00890-CCA-R3-CD, 2003 WL 22080791, at *7 (Tenn. Crim. App. at Knoxville, Sept. 9, 2003). The appellant appears to contend that in order for his consent to be valid, he would have to have known that Officer Smith was an undercover agent. However, the appellant's consent to enter his home was not vitiated by Officer Smith's status as an undercover officer. This court has previously observed that "[t]he use of undercover agents and informants does not violate the Fourth Amendment." State v. James, 638 S.W.2d 848, 849 (Tenn. Crim. App. 1982). In fact, the United States Supreme Court has recognized that "in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents." Lewis v.

---

[1] In State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted), our supreme court noted that "'article I, section 7 is identical in intent and purpose with the Fourth Amendment.'" For the purposes of this opinion, we consider the protection provided by these provisions to be coextensive.

[2] The appellant ostensibly claims that the entry into and eventual search of his home could have been accomplished by police securing a search warrant prior to Officer Smith's first entry into his home. However, as the trial court found, "[u]nder the facts of this case the officers would not have had probable cause to get a search warrant until they were invited into the house and observed the drugs."

United States, 385 U.S. 206, 209, 87 S. Ct. 424, 426 (1966); see also State v. Vanderford, 980 S.W.2d 390, 400 (Tenn. Crim. App. 1997).  Notably, the Supreme Court stated:

> [W]hen, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street.  A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

Lewis, 385 U.S. at 211, 87 S. Ct. at 427.  Accordingly, based upon Officer Smith's testimony that was accredited by the trial court, we conclude that the appellant consented to Officer Smith's entry into his home.

After Officer Smith's lawful entry into the appellant's residence, he observed the appellant withdraw a black bag from underneath the kitchen sink and remove a clear, plastic bag of cocaine from the black bag.  The appellant placed the plastic bag of cocaine on the kitchen counter in plain view.  This court has previously observed that, typically,

> "plain view" denotes an extension of a prior valid search and is distinguishable from a "look" or "open view." . . . [However,] "[t]here is a clear distinction between a look and a search.  Whereas a search is afforded all the Fourth Amendment protections, a look . . . . includes those observations which are clearly visible, readily observable and open to public gaze."

State v. Johnson, 705 S.W.2d 681, 683 (Tenn. Crim. App. 1985).  Therefore, because Officer Smith observed the items in plain view after being given consent to enter, there was no need for a warrant.  See State v. Layne, 623 S.W.2d 629, 635 (Tenn. Crim. App. 1981), overruled on other grounds by State v. Holt, 691 S.W.2d 520, 522 (Tenn. 1984).

After viewing the cocaine in plain view, Officer Smith signaled his takedown team to enter the home to arrest the appellant and seize the contraband.  The trial court determined that, at that point, police had probable cause to believe the appellant was engaging in criminal activity and "exigent circumstances would have prevented [police] from obtaining a warrant."  This court has explained:

> Exigent circumstances are limited to three situations: (1) when officers are in "hot pursuit" of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.

<u>State v. Steven Lloyd Givens</u>, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033, at *3 (Tenn. Crim. App. at Nashville, Nov. 29, 2001). Arguably, the officers feared that the appellant was an immediate threat because he was armed with two loaded handguns. Additionally, if police had delayed entry to obtain a search warrant, the appellant could have destroyed the cocaine and the marijuana. The trial court viewed the witnesses and accredited the testimony of the officers, concluding, as we have, that police did not act inappropriately in entering the appellant's home without a search warrant.

Once police were inside the appellant's home, the appellant was arrested and handcuffed. Officer Taylor and Lieutenant Jamison led the appellant to a bedroom to lessen the pressure from additional officers. Once in the bedroom, Officer Taylor requested the appellant's permission to search his house. The appellant, appearing to understand and looking relaxed, agreed to the search and signed a written consent to search form. Therefore, the trial court did not err in determining that the marijuana found after the consent to search was signed was the product of a permissible search.

### B. Rule 41(g)

As his second issue, the appellant questions "[w]hether [Tennessee Rule of Criminal Procedure] 41(g) violates 14th Amendment due process or the Tennessee Constitution, Art. 1, Sec. 9, giving the [appellant] the right to be heard by himself." As factual support for this claim, the appellant maintains that

> [a]t the trial the [appellant] did not testify and relied on his motion to suppress, being fearful of waiving his motion to suppress under [Tennessee Rule of Criminal Procedure] 41(g) which appears to spell out a rule that a defendant who testifies before a jury waives his motion to suppress illegally seized evidence unless he testifies to a lesser crime or mitigating circumstances.

Given the "shotgun" approach taken by the appellant in raising his remaining issues, we will attempt to address what we have determined to be his concerns. Moreover, we note that the State has not addressed the appellant's complaints regarding Rule 41(g).

Tennessee Rule of Criminal Procedure 41(g) provides:

> If inadmissible evidence obtained by an illegal search or seizure is erroneously permitted to be introduced against a defendant, and if the defendant subsequently testifies as to the same evidence but gives it an innocent or mitgating cast as to the charge and denies the charge, such testimony of the defendant shall not be deemed to be a waiver of the right to object to the admissibility of such evidence.

Interestingly, the Advisory Commission Comment to Rule 41(g) explains that the provision "is designed to change the rule of Lester v. State, . . . 393 S.W.2d 288 ([Tenn. 1975]), which often caused a defendant to waive one right by exercising another. . . . [T]he provision applies only when the testifying defendant denies the charge."

Rule 41(g) essentially operates to prevent a defendant from being "forced to choose between competing constitutional rights because of an illegality perpetrated by the state." State v. Valentine, 911 S.W.2d 328, 332 (Tenn. 1995). In other words, a defendant could not be expected to waive his right to challenge illegally obtained evidence if the State has essentially forced him to forfeit his right not to testify in order to explain the illegally obtained evidence. Accordingly, if the appellant in the instant case had testified and placed the evidence in "an innocent or mitgating cast," he would not have waived his right to challenge any inadmissible evidence obtained by an illegal search or seizure. Therefore, we conclude that Rule 41(g) has had no unconstitutional "chilling" effect on the appellant.

## C.  Plain Error

Tennessee Rule of Criminal Procedure 52(b) provides that "[a]n error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice." In the instant case, the appellant was convicted for possessing 300 grams or more of cocaine with the intent to sell, possessing 300 grams or more of cocaine with the intent to deliver, and two counts of possession of marijuana. Double jeopardy concerns dictate that the convictions for possessing 300 grams or more of cocaine with the intent to sell and possessing 300 grams or more of cocaine with the intent to deliver be merged into a single conviction. Additionally, the two convictions for possessing marijuana should also be merged into a single conviction.

## III.  Conclusion

In sum, we affirm the appellant's convictions but remand to the trial court for correction of the judgments to reflect that the appellant's conviction of possessing 300 grams or more of cocaine with the intent to deliver and the appellant's conviction of possessing 300 grams or more of cocaine with the intent to sell merge into a single judgment of conviction, and for correction of the judgments to reflect that the appellant's convictions for possessing over one-half ounce of marijuana with the intent to sell and possessing over one-half ounce of marijuana with the intent to deliver also merge into a single judgment of conviction.

_____
NORMA McGEE OGLE, JUDGE